**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANIMALSCAN, LLC, | : | CIVIL ACTION NO. 3:18-2288 |
| | : | |
| **Plaintiff** | : | **(JUDGE MANNION)** |
| | | |
| **v.** | : | |
| | : | |
| **LIVE OAK VETERINARY SPECIALISTS, LLC,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court in this diversity breach of contract sounding action is the motion to dismiss all claims raised by plaintiff AnimalScan, LLC. The motion was filed by defendants Live Oak Veterinary Specialists, LLC ("LOVS") and Jason King (collectively "LOVS defendants"). (Doc. 6). Based upon the court's review of the motion and the briefs of the parties, as well as the exhibits, defendants' motion will be **DENIED IN ITS ENTIRETY**.

## I. PROCEDURAL BACKGROUND

Plaintiff initiated this action by filing complaints in the Luzerne County Court of Common Pleas on November 6, 2018, against defendants LOVS, King, Covert Aire, LLC, and Michael Covert.[1] (Doc. 2). The complaint raises claims against LOVS and King for: (1) Breach of Written Contract; (2) Unjust

---

[1]The plaintiff's complaints against all of the defendants were consolidated by the county court.

Enrichment; (3) Quantum Meruit; (4) Breach of Oral Contract; (5) Promissory Estoppel; and (6) Common Law Fraud. The complaint also raises causes of action against Covert Aire and Covert for Breach of Contract and Negligence.[2]

On November 29, 2018, LOVS defendants removed the consolidated cases to this court based on diversity jurisdiction pursuant to 28 U.S.C. §1441 and §1332. (Doc. 1). It is alleged that there is complete diversity of the parties under 28 U.S.C. §1332(a)(1).

On December 6, 2018, LOVS defendants filed the instant motion to dismiss all claims against them contained in plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 6). They filed their brief in support, with Exhibits attached, on December 18, 2018. (Doc. 7). Plaintiff filed its brief in opposition on January 16, 2019. (Doc. 12). LOVS defendants filed a reply brief on January 22, 2019. (Doc. 13).

## II.   FACTUAL BACKGROUND[3]

---

[2]Even though defendants Covert Aire and Covert were served and counsel entered an appearance for them, (Doc. 5), to date, they have failed to respond to plaintiff's complaint. As such, plaintiff will be directed to file a status report regarding defendants Covert Aire and Covert.

[3]Since both parties recognize the correct standard of review applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court will not repeat it. Suffice to say that the facts alleged in plaintiff's complaint must be accepted as true in considering the LOVS defendants' motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

According to the complaint, plaintiff is in the business of leasing veterinary magnetic resonance imaging scanners ("MRIs" or "MRI units") to veterinary clinics. LOVS is a veterinary clinic that uses MRI units in its business. Dr. King is the owner of LOVS. Covert Aire is in the heating, ventilation and air conditioning (HVAC) business, and Covert owns Covert Aire.

On December 15, 2014, LOVS and plaintiff executed a written "Equipment Lease Agreement" (the "Agreement"), which provided that plaintiff would lease an MRI unit to LOVS for a minimum rental term of 60 months, commencing when plaintiff delivered the MRI unit to LOVS. (Doc. 7-1, Ex. A). King entered a personal guarantee under paragraph 12 of the Agreement, which provided that LOVS's obligations for monthly rental payments were secured "by the personal guarantee of each LOVS principal." Also, if LOVS failed to make its monthly payment, King would be "personally responsible for handling payments under the term of this agreement." The Personal Guarantee of King was limited by the Agreement to five months of payment, unless LOVS failed to make payments for the first 27 months of the Agreement. It is alleged that since LOVS did not reach the 27-month payment threshold, the personal guarantee against King is not limited to only five months of payments.

On March 10, 2015, plaintiff delivered the MRI unit to LOVS thus starting the 60-month lease term.

Paragraph 6 of the Agreement contained a provision to terminate the

3

lease for default by either party of any material term which continues for 60-days after receiving written notice of the default, but it allowed the breaching party to cure the default within the 60-day notice period.[4] Paragraph 15 of the Agreement also contained a merger clause and a clause requiring that any amendments to it must be made by "a writing signed by both parties."

On February 11, 2016, King, as managing partner of LOVS, sent plaintiff a notice of an alleged default in a letter in which he claimed that the MRI unit was failing due to problems with its heating, ventilation and air conditioning ("HVAC") unit. (Doc. 7-1, Ex. B). King stated that plaintiff was aware of the problem for months and failed to correct it which caused the unit to be non-operational. King stated that LOVS intended to terminate the Agreement if the problems detailed in his letter were not fixed and the MRI unit made operational.

When plaintiff was notified of the default, it alleges that it immediately cured the problem by having repairs made to the MRI and HVAC by Covert Aire on February 11, 2016, the same day that it was notified of the problem. It is further alleged that when plaintiff was notified by LOVS of any other issues with the HVAC unit, it promptly provided service within one day or otherwise issued a credit to LOVS pursuant to the Agreement. In particular, plaintiff alleges that every time an issue with the HVAC unit occurred between February and July of 2016, it gave LOVS notice of its efforts to cure the

---

[4]Since the Agreement was attached to plaintiff's complaint, Doc. 7-1, Ex. A, the court does not repeat its provisions.

problems and LOVS accepted the repairs made to the MRI unit.

Plaintiff alleges that even though it cured all of the problems LOVS had with the MRI unit, LOVS wrongfully terminated the Agreement in a letter from King dated July 8, 2016. (Doc. 7-1, Ex. C). King stated that since his February 11 letter, "AnimalScan has made several efforts to cure the default," but "none of those efforts has been successful." King also stated that while plaintiff proposed to replace the MRI unit, LOVS rejected the proposal since plaintiff indicated that the replacement unit would be operational no more than 90% of the time which was less than the uptime required under the Agreement of no less than 98% of the time. However, plaintiff alleges that as of July 11, 2016, both the HVAC unit and the MRI unit were fully functional and operational and, that LOVS was responsible for the maintenance and care of the MRI unit under the Agreement.

Finally, it is alleged that in August of 2016, plaintiff and LOVS reached an amicable resolution whereby plaintiff would provide LOVS with a replacement MRI unit. It was also agreed that the terms of the Agreement would remain unchanged. Plaintiff then bought a new MRI unit after LOVS represented that it would accept the replacement unit. Nonetheless, LOVS advised plaintiff in an August 15, 2016 letter that it would not accept delivery of the new MRI unit from plaintiff.

Plaintiff alleges that it incurred damages in the amount of $43,100 due to LOVS's refusal to accept the replacement MRI unit. On its breach of contract claim against LOVS and King, Count I, plaintiff seeks damages of

5

$233,280 representing 18 months of the minimum rent amount of $12,500 allegedly due, plus damages for 18 months of the average of LOVS's scan fees.

## III.    DISCUSSION

LOVS defendants move to dismiss all six claims against them. The court will now address the claims *seriatim*.

### A. Count I, Breach of Contract

LOVS defendants contend that plaintiff fails to state a cognizable breach of contract claim against them in Count I since its allegations do not show that LOVS breached the contract. Alternatively, defendants contend that plaintiff's breach of contract claim against King should be dismissed since there is no contractual relationship between him and the plaintiff.

Initially, there is no dispute that there is an enforceable contract between plaintiff and LOVS and that the Agreement contains the contract's material terms between the stated two parties. Defendants however argue that based on the allegations in the complaint, it appears that there is no dispute that LOVS did not breach the Agreement. Defendants state that since the Agreement allowed LOVS to terminate the Agreement due to plaintiff's failure to cure the default within 60 days after receiving King's February 11, 2016 letter detailing "service failures" with the MRI unit, i.e., his notice of a default, and since plaintiff failed to timely cure the default, LOVS properly

6

terminated the Agreement. Defendants point out that while plaintiff alleges that it "cured this alleged default" "by engaging the services of its service providers to commence repairs of both the MRI and HVAC unit", it does not allege that it was able to remediate the problems with the units. Defendants also point out that plaintiff admits there were several issues with its MRI unit requiring numerous service calls, and that plaintiff offered to replace the MRI unit if any doubts as to its condition remained.

LOVS defendants then state that they waited well beyond 60 days after sending King's February 11, 2016 letter until they sent plaintiff their July 8, 2016 letter providing it with written notice that the Agreement was terminated. In the termination letter, King also indicated that although plaintiff offered to replace its "malfunctioning [e]quipment", LOVS rejected this offer since plaintiff could not promise that the replacement unit would be sufficiently functional within the uptime stated in the Agreement.

As such, defendants contend that LOVS properly terminated the Agreement and that as a matter of law Count I should be dismissed against LOVS since it did not breach its contract with plaintiff.

In response, plaintiff states that it has alleged that it immediately cured the problems with its MRI unit when it received King's February 11, 2016 letter, and that when it was notified of the subsequent issues with the unit between February and July 2016, it promptly repaired the issues within one day or it gave a credit to LOVS for the impacting result pursuant to Section 3b of the Agreement. Further, plaintiff indicates that it alleged LOVS accepted all

7

of the repairs it made to the MRI unit, and that LOVS caused several of the problems with the unit by trying to fix them itself instead of immediately contacting plaintiff as required by the Agreement. Plaintiff also states that since it cured all of the problems with the MRI unit when it was notified of them and, since the HVAC unit and the MRI unit were fully functional as of July 11, 2016, LOVS wrongfully terminated the Agreement on July 8, 2016.

Both parties agree that Pennsylvania law applies to this case. Indeed, because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, the court applies Pennsylvania law. *See* Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 563 (3d Cir. 2003). In order to establish a breach of contract claim under Pennsylvania law, plaintiff must demonstrate: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. 1999) (citation omitted); Gorski v. Smith, 812 A.2d 683, 692 (Pa.Super. 2002); Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).

As detailed above, plaintiff has sufficiently alleged the requisite elements regarding its breach of contract claim against LOVS. In particular, it alleges that pursuant to ¶6 of the Agreement, its lease with LOVS was not properly terminated since it "cure[d] the default within the notice period or by written notice (email sufficient) provide[d] proof of reasonable efforts to cure and notice of ability to cure within thirty (60) [sic] days thereafter." LOVS defendants can conduct discovery to develop the facts as to what plaintiff did

8

to cure the default. Thus, defendants' motion to dismiss Count I of the complaint as against LOVS will be denied.

Next, defendants argue, in the alternative, that King should be dismissed since he was not a party to the Agreement and did not sign it in his personal capacity. No doubt that the Agreement was between LOVS and plaintiff and signed by representatives of LOVS and plaintiff, but King entered a personal guarantee under ¶12 of the Agreement, which provided that LOVS's obligations for monthly rental payments were secured "by the personal guarantee of each LOVS principal." Thus, under the Agreement, if LOVS failed to meet its monthly obligations, King, as the owner of LOVS, would be "personally responsible for handling payments." Further, even though King's personal guarantee is limited by the Agreement to five months of payment, since plaintiff alleges that LOVS failed to fulfill its payment obligations for the first 27 months of the Agreement, the personal guarantee against King is not limited to only five months of payments.

Therefore, since King, in his capacity as owner of LOVS, was liable under the terms of the Agreement, defendants' motion to dismiss Count I as against King will be denied. As such, plaintiff's breach of contract claim in Count I will proceed against both LOVS and King.

## B. Counts II and III, Unjust Enrichment and Quantum Meruit

LOVS defendants next move to dismiss Counts II and III of plaintiff's complaint for unjust enrichment and quantum meruit, respectively, because

9

a contract exists. In particular, LOVS defendants contend that plaintiff's claims for unjust enrichment and quantum meruit should be dismissed because they are not available in this case in which the written Agreement controls the obligations of the parties.

"Although plaintiffs are free to pursue the alternative theories of recovery of breach of contract and unjust enrichment, the finding of a valid contract prevents a party from recovering for unjust enrichment as the measure of damages is limited to that which is provided for in the contract itself." Halstead v. Motorcycle Safety Foundation, Inc., 71 F.Supp.2d 455, 459 (E.D.Pa.1999) (citations omitted). "Essentially an equitable doctrine, an unjust enrichment claim arises from a quasi-contract." Fleming Steel Co. v. Jacobs Engineering Group, Inc., 373 F.Supp.3d 567, 603 (W.D.Pa. 2019) (citations omitted). "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." Id. (citations omitted). "A plaintiff must prove the same elements for quantum meruit and unjust enrichment." Burton Imaging Group v. Toys ""R" Us, Inc., 502 F.Supp.2d 434, 440 (E.D.Pa. 2007) (citing Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000)). "Quantum meruit creates an implied promise between parties in the absence of a contract in order to prevent unjust enrichment." Id. (citation omitted).

Plaintiff states that despite the facts that it has an express contract with LOVS and it cannot recover under Count I as well as Counts II and III, it has

properly pled causes of action for breach of contract, unjust enrichment, and quantum meruit, in the alternative and in separate Counts, "[i]n the event that it is found the Agreement that forms the basis of the breach of contract cause of action is legally invalid in some way." In fact, LOVS defendants contend that they properly terminated the Agreement and that it was no longer valid. Thus, plaintiff state that they can plead unjust enrichment and quantum meruit as alternatives to its breach of contract claim under Fed.R.Civ.P. 8(d)(2).

As the court in <u>Vantage Learning (USA), LLC v. Edgenuity, Inc.</u>, 246 F.Supp.3d 1097, 1100 (E.D.Pa. 2017), stated:

> It is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment. Rule 8(d)(2) nonetheless permits a plaintiff to plead unjust enrichment in the alternative in certain circumstances, "even where the existence of a contract would preclude recovery for unjust enrichment." Such circumstances require either that (I) the contract at issue covers only a part of the relationship between the parties, or that (ii) the existence of a contract is uncertain or its validity is disputed by the parties.

(internal citations omitted).

LOVS defendants' motion will be denied as to Counts II and III since under Fed.R.Civ.P. 8(d) plaintiff can plead causes of action in the alternative in separate counts even though plaintiff can not recover under both contract and quasi-contract theories. *See id.*

LOVS defendants also argue that Counts II and III should be dismissed as against King since plaintiff has not conferred a benefit on him. Defendants also state that the "complaint contains *zero* allegations that Dr. King

participated in any conduct that could render him liable through the participation theory." Plaintiff replies that "King can be held liable to [it] based upon the participation theory, which 'imposes liability on the individual as an actor rather than as an owner.'" (Doc. 12 at 16) (quoting <u>Wicks v. Milzoco Builders, Inc.</u>, 470 A.2d 86, 90 (Pa. 1983); *see also* <u>USTAAD Systems, Inc.v. iCap Intern. Corp.</u>, 2010 WL 3984882, at *1 n. 3 (M.D.Pa. Oct. 12, 2010) (holding that "[u]nder the participation theory, an individual officer of a corporation is personally liable for misconduct in which he or she actually participated," and finding that it can be applied to an unjust enrichment claim and other acts of "misfeasance")).

"To establish a claim of unjust enrichment [and quantum meruit], a party must allege '[1.] benefits conferred on defendant by plaintiff, [2.] appreciation of such benefits by defendant, and [3.] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" <u>Aetna, Inc. v. Health Diagnostic Laboratory Inc.</u>, 2015 WL 9460072, *7 (E.D.Pa. Dec. 28, 2015) (citations omitted).

"[A] corporate officer can be personally liable under Pennsylvania law under 'the participation theory'", and "[s]uch liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer." *Id*. at *8 (citations omitted). Rather, "liability attaches where the record establishes the individual's participation in the tortious activity." *Id*.

(citation omitted). "Participation theory, in simple terms, is a theory which imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation." *Id.* (quoting First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. Ct. 1991)). Further, "[a] corporate officer must have engaged in misfeasance [i.e., 'the improper performance of an act"] to be liable under a 'participation theory' and will not be liable for nonfeasance [i.e., "the omission of an act which a person ought not to do"]." *Id*. at *9 (internal citations omitted).

Defendants also point out that even if plaintiff's claims of unjust enrichment and quantum meruit against King are based on the participation theory, they are improper since "[t]hese two claims are not based on an alleged tort committed by [LOVS] or Dr. King, but are instead based on a contract between AnimalScan and [LOVS]." However, as plaintiff explains, it has properly claimed that King is individually liable for unjust enrichment and quantum meruit under the participation theory since it has alleged that King is the owner of LOVS and is "the only member of [LOVS]", and that "[i]n his capacity as owner, guarantor, and sole member of LOVS, Dr. King received the benefits of the use of the HVAC unit and MRI unit without fairly compensating [plaintiff] for the same." Further, the parties can conduct discovery on the issues of whether plaintiff has conferred a benefit on King which he realized and retained and whether King engaged in misfeasance.

Thus, since plaintiff has sufficiently alleged that it has conferred a

benefit on King which he realized and that King engaged in misfeasance, LOVS defendants' motion to dismiss Counts II and III as against King will be denied based on the participation theory. *See* Fleming Steel, 373 F.Supp.3d at 604 ("In order to determine whether the defendant in a quantum meruit action has been unjustly enriched such that the plaintiff is entitled to damages, [the court must] consider whether the plaintiff has conferred a benefit on the defendant which has been realized and retained.") (citations omitted).

### C. Count IV, Breach of Oral Contract

Defendants move to dismiss Count IV which asserts a breach of oral contract claim. The oral contract was based on the alleged August 2016 agreement between plaintiff and LOVS which provided that plaintiff would get a replacement MRI unit for LOVS. Defendants argue, in part, that this oral contract is a modification of the written Agreement and, since the Agreement requires that any modification must be made in writing signed by both parties, the oral contract is invalid. Plaintiff respond by stating that the oral contract was not a modification of the written Agreement, "but rather [was] a new, separate agreement between the parties."

The Agreement plainly provided that only signed written modifications were allowed by its terms. The court finds that the alleged oral agreement between plaintiff and LOVS, whereby plaintiff would provide LOVS with a

replacement MRI unit was a modification of the written Agreement since it is also alleged that the parties agreed that the terms of the written Agreement would remain unchanged. Nonetheless, in <u>Hampden Real Estate Inc. v. Metropolitan Management Group, Inc.</u>, 142 Fed.Appx. 600, 602 (3d Cir. 2005), the Third Circuit stated that a "written agreement may be modified by a subsequent written or oral agreement and this modification may be shown by writings or by words or by conduct or by all three." (quoting <u>Kersey Mfg. Co. v. Rozic</u>, 207 Pa.Super. 182, 215 A.2d 323 (1965), *rev'd on other grounds* 422 Pa. 564, 222 A.2d 713 (1966)). Further, the parole evidence rule does not apply and does not prevent evidence regarding the intention of the parties to modify the terms under the Agreement after it was executed. *Id*. Additionally, "in the case of a disputed oral contract, what was said and done by the parties, as well as what was intended by what was said and done by the parties, are questions of fact to be resolved by the trier of fact." <u>Fleming Steel</u>, 373 F.Supp.3d at 582 (citation omitted).

In <u>Hampden Real Estate</u>, 142 Fed.Appx. at 603, the Third Circuit explained as follows:

> It is well-settled law in Pennsylvania that a "written contract which is not for the sale of goods may be modified orally, even when the contract provides that modifications may only be made in writing." <u>Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., Inc.</u>, 454 Pa.Super. 188, 685 A.2d 141, 146 (1996). "The modification may be accomplished either by words or conduct," <u>First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.</u>, 824 F.2d 277, 280 (3d Cir. 1987), demonstrating that the parties intended to waive the requirement that amendments be made in writing, <u>Somerset Cmty. Hosp.</u>, 685 A.2d at 146. An oral modification of a written

contract must be proven by "clear, precise and convincing evidence." Fina v. Fina, 737 A.2d 760, 765 (Pa.Super. 1999).

Thus, to prove the alleged subsequent oral modification of the Agreement, plaintiff has the burden of proving by "clear, precise and convincing evidence" an oral contract modified the prior written Agreement. Somerset Cmty. Hosp., 685 A.2d at 146.

The court finds that plaintiff has plead sufficient facts to support its breach of oral contract claim contrary to LOVS defendants' assertion.

In Ecore International, Inc. v. Downey, 343 F.Supp.3d 459, 486-87 (E.D.Pa. 2018), the court explained:

> The party relying on an alleged oral contract—in this case, [plaintiff]—has the burden of proving its existence. *See* Edmondson v. Zetusky, 674 A.2d 760, 764 (Pa. Commw. Ct. 1996). "To establish the existence of an agreement one must show that: (1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration." Redick v. Kraft, Inc., 745 F. Supp. 296, 300 (E.D.Pa. 1990) (citing Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986)); *see also* Szymanski v. Sacchetta, 2012 WL 246249, at *4 (E.D.Pa. Jan. 26, 2012) (setting forth elements of enforceable contract). "For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain." Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). "[A] contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 635 Pa. 427, 137 A.3d 1247, 1258 (2016) (quoting J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002) ); *see also* Orta v. Con-Way Transp., No. 02-1673, 2002 WL 31262063, at *1 (E.D.Pa. Oct. 8, 2002) ("Pennsylvania

recognizes and enforces oral agreements." (citation omitted)).

Further, "[t]he [c]ourt must determine whether a reasonable jury, considering the parties' undisputed actions and words, could find that they formed a binding oral contract", and "[t]hat inquiry may be resolved at the summary judgment stage." Id. at 488 (citations omitted).

In Count IV, plaintiff alleges that it offered to provide a replacement MRI to LOVS, and that LOVS accepted delivery of the new unit which created a binding contract. In particular, plaintiff alleges that the "offers and acceptances were made in July and August of 2016, by and through LOVS's and [its] authorized counsel, who were 'engaged in discussions to reach an amicable resolution in this case.'" Plaintiff also alleges that it complied with its duties and obligations under the oral contract, and that LOVS refused to accept the replacement MRI unit. Consequently, plaintiff alleges that it incurred damages due to the alleged breach of the oral contract by defendants.

Plaintiff has stated the requisite elements regarding its breach of oral contract claim against LOVS and it can proceed with this claim against King based upon the participation theory. Therefore, at this stage of the case, dismissal of Count IV is premature. *See* Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F.Supp.2d 474, 494 n. 22 (E.D.Pa. 2009) (court noted that "at the motion to dismiss stage, an oral modification to the written lease is not per se invalid", since "[u]nder Pennsylvania law, an

agreement that prohibits non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing", and that "Plaintiffs are entitled to discovery to prove that the conduct of the parties shows an intent to orally amend the contract.") (citations omitted).

Additionally, LOVS defendants argue that the alleged oral contract is unenforceable under the Statute of Frauds ("SOF). Plaintiff contends that a written agreement is not required under the SOF since the alleged oral agreement that it would provide LOVS with a replacement MRI is not a lease contract under 13 Pa. C.S.A. § 2A201(a)(1) and (2). In any event, since the court has found that the alleged oral agreement to replace the MRI is an oral modification of the written Agreement, plaintiff's breach of oral contract claim in Count IV can still proceed against defendants since plaintiff states that "there is a writing in place, taking the [oral] agreement outside of the statute of frauds", and that "[f]uture discovery will also demonstrate that the terms of the oral contract were ratified by the LOVS Defendants." (Doc. 12 at 18). As plaintiff states, (Id.), "[t]o the extent that the oral contract is viewed as a modification of the [written] Agreement, the Complaint clearly demonstrates the parties intended to enter into the oral contract and, thus, waive the non-written modification prohibition."

The court will allow the parties to conduct discovery regarding the alleged oral contract which modified the written Agreement. As such, LOVS

defendants' motion to dismiss Count IV will be denied.

### D. Count V, Promissory Estoppel

Defendants move to dismiss Count V in which plaintiff alleges a claim for promissory estoppel. In Count V, plaintiff alleges that: "LOVS made a promise to AnimalScan that it would accept a replacement MRI unit from AnimalScan, so that LOVS could continue to work during the pendency of litigation"; "LOVS should have reasonably expected that it would induce AnimalScan to act upon this promise"; "[plaintiff] did, in fact, justifiably rely upon LOVS's promise, to its great detriment, as evidenced by its purchase of the new [MRI] unit in reliance upon LOVS's promise, incurring damages in an amount in excess of $38,600.00"; and that "injustice can be avoided only by enforcing LOVS's promise to accept the [new] MRI unit."

"To make a claim for promissory estoppel, [plaintiff] must allege: 1) [the defendants] made a promise [it] should have reasonably expected to induce action or forbearance on the part of [plaintiff]; 2) [plaintiff] actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." MDNet, Inc. v. Pharmacia Corp., 147 Fed.Appx. 239, 244 (3d Cir. 2005) (citation omitted). "Promissory estoppel is applied to enforce a promise not supported by consideration, where there is no binding contract." *Id.*; *see also* In re Ginko Assoc., L.P., 372 B.R. 229, 239 (E.D.Pa. 2007) ("either additional consideration or reliance is

required to support a contractual modification.") (citations omitted). "The doctrine of promissory estoppel is applied 'to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment.'" Kraus Industries, Inc. v. Moore, 2007 WL 2744194, *7 (W.D.Pa. Sept. 18, 2007) (citations omitted).

"Promissory estoppel is an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing." *Id*. at *8.(citations omitted). Although "[c]ourts have held that breach of contract and promissory estoppel may be pleaded in the alternative, but that if the court finds that a contract exists, the promissory estoppel claim must fall." *Id*. (citations omitted).

Plaintiff has pled sufficient facts to state a cognizable claim for promissory estoppel against LOVS and King. Also, as discussed, the alleged oral agreement whereby plaintiff would provide LOVS with a replacement MRI unit and LOVS promised that it would accept it, is a modification of the Agreement and not a lease contract under 13 Pa. C.S.A. § 2A201(a)(1) and (2). Further, even it the oral agreement is a lease contract, plaintiff has represented that a writing exists between the parties which satisfies the SOF, 13 Pa.C.S.A. §2A201(a)(2). Thus, the court has found that dismissal at this stage of the case is premature and the parties will be permitted to conduct discovery regarding the terms of the alleged oral contract and whether the

terms were accepted by the LOVS Defendants.

As such, LOVS defendants' motion to dismiss Count V will be denied.

**D. Count VI, Fraud**

Finally, LOVS defendants move to dismiss Count VI. In Count VI, plaintiff raises a common law fraud against LOVS and King. Defendants contend that plaintiff's fraud allegations fail to satisfy the particularity rule of Fed.R.Civ.P.9(b). Defendants state that plaintiff fails to state well-pleaded factual allegations to establish "the who, what, when, where, and how" with respect to its fraud claim.

In Count VI, plaintiff alleges that: "LOVS made a promise and representation to AnimalScan that it would accept a replacement MRI unit from AnimalScan"; "this representation was material to the transaction"; "the representation ... was false"; "LOVS knew the representation was false, or made it with recklessness as to whether it was true or false"; "LOVS intended on misleading AnimalScan into relying on its representation"; "AnimalScan justifiably relied upon LOVS's misrepresentation"; and "AnimalScan's injury was proximately caused by its justifiable reliance upon LOVS's misrepresentation" since LOVS reneged on its representation by informing AnimalScan that it would not accept the new MRI unit after AnimalScan had purchased a new unit.

The court in <u>Rosemont Taxicab Co., Inc. v. Philadelphia Parking</u>

Authority, 327 F.Supp.3d 803, 829-30 (E.D.Pa. 2018), stated:

> In order to establish a cause of action based on fraud under Pennsylvania law, a plaintiff must prove the following, by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (1994); Porreco v. Porreco, 571 Pa. 61, 811 A.2d 566, 570-571 (2002) (citing Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (1999)).

Rule 9(b) provides a particularity requirement to fraud claims. *See* Singleton v. Jas Automotive LLC, 378 F.Supp.3d 334, 342-43 (E.D.Pa. 2019).

In Singleton, *id*., the court explained:

> Rule 9(b) adds an additional pleading requirement to certain claims. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[.]" Fed.R.Civ.P. 9(b). The particularity standard of Rule 9(b) may be satisfied by pleading "the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). This requirement "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). Even prior to discovery, "[b]oilerplate and conclusory allegations are insufficient" to satisfy the particularity requirement. New Legion Co. v. Thandi, 2018 WL 6329144, at *2 (E.D.Pa. Dec. 4, 2018) (Baylson, J.) (citing In re Burlington, 114 F.3d at 1418).

Further, "[w]here there are multiple defendants involved ... the particular fraudulent acts allegedly committed by each defendant must be specified." *Id*. at 352 (citation omitted).

Here, plaintiff has pled its fraud claim with the requisite particularity under Rule 9(b). As plaintiff succinctly explains, (Doc. 12 at 24), in its brief:

> The "who" is the LOVS Defendants themselves. The "what" is the LOVS Defendants' promise to accept a new MRI from AnimalScan. The "when" is July and August of 2016, when these offers and acceptances were made by and through LOVS's and AnimalScan's authorized counsel, who were "engaged in discussions to reach an amicable resolution in this case." (Compl. ¶ 37). The "how" is by refusing to accept the MRI unit after misleading AnimalScan and inducing it to purchase a costly new unit in reliance upon their initial acceptance of AnimalScan's offer.

As the court has already found regarding plaintiff's other claims, King can be held liable to plaintiff for fraud under the participation theory, as the owner and sole member of LOVS. *See* Wicks, 470 A.2d at 90. Thus, since plaintiff's allegations satisfy the particularity requirement set forth in Rule 9(b), LOVS defendants' motion to dismiss Count VI will be denied.


## IV. CONCLUSION

LOVS defendants motion to dismiss, (Doc. 6), all of the claims against them in Counts I through VI of plaintiff's complaint, (Doc. 2), will be **DENIED IN ITS ENTIRETY** at this stage of the proceedings. An appropriate order will be issued.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 13, 2019**

18-2288-01.wpd

23